1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

9

SOUTHERN DISTRICT OF CALIFORNIA

10

11   KYLE ROBERT JAMES,

12                                  Plaintiff,

13   v.

14   BARBARA LEE, et al.,

15                                  Defendants.

16

17

18

19

Case No.: 16-cv-01592-AJB (JLB),
consolidated with 17-cv-00859-AJB
(MDD)

**REPORT AND
RECOMMENDATION REGARDING
DEFENDANT'S MOTION TO
DISMISS FIFTH AMENDED
COMPLAINT**

**[ECF No. 144]**

20        Plaintiff Kyle Robert James ("Plaintiff"), a state prisoner proceeding *pro se* and *in*
21   *forma pauperis*, commenced this civil rights action pursuant to 42 U.S.C. § 1983 on
22   June 21, 2016.  (ECF No. 1.)  Presently before the Court is a motion to dismiss the Fifth
23   Amended Complaint (ECF No. 138 ("5AC")) filed by Defendant Mark Kania
24   ("Defendant" or "Kania").  (ECF No. 144.)  Defendant moves to dismiss the 5AC in its
25   entirety with prejudice pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.
26   (*Id.*)  Plaintiff filed an opposition (ECF No. 152), and Defendant filed a reply in support
27   (ECF No. 153).

28

Pursuant to 28 U.S.C. § 636(b) and Civil Rule 72.3 of the Local Rules of Practice for the United States District Court for the Southern District of California, this Report and Recommendation is submitted to United States District Judge Anthony J. Battaglia.  After a thorough review of the Plaintiff's 5AC and the pleadings, and for the reasons discussed below, the Court respectfully **RECOMMENDS** that Defendant's motion to dismiss be **GRANTED IN PART** and **DENIED IN PART**.

## I.    BACKGROUND

### A.    Factual Background

Plaintiff, who is currently incarcerated at California State Prison, Corcoran, is proceeding *pro se* and *in forma pauperis* in this action.  (*See* ECF Nos. 1, 3.)  Plaintiff alleges the following in his 5AC:

On July 3, 2014, Plaintiff was a pretrial detainee at the George Bailey Detention Facility ("GBDF") in San Diego, California, in the custody of the San Diego Sheriff's Department.  (5AC at 3.)  On that day, he was handcuffed "behind his back" by two deputies and escorted to a gurney where he was "thrown (placed) face-down, placed in full restraints, and unclothed."  (*Id.*)  The deputies then pushed Plaintiff on the gurney down a corridor to a processing area and into an empty court holding tank.  (*Id.*)

At 10:25 a.m., Plaintiff was x-rayed in the holding tank by an x-ray technician.  (*Id.*)  The x-ray showed "two metallic objects," which turned out to be one handcuff key and one master lock key.  (*Id.*)  Plaintiff initially refused to turn over the keys.  (*Id.* at 8.)  One hour later, Plaintiff "eventually" gave the keys to the deputies after removing them from his anal cavity.  (*Id.* at 3, 6.)  Plaintiff was then "hogtied naked, placed on a gurney (stretcher) by deputies at the orders of the Watch Commander[,] [Defendant] Lieutenant Mark Kania."  (*Id.* at 3.)  The deputies proceeded to push the gurney with the naked, hogtied Plaintiff down the corridor to an outside parking lot, where a sheriff's transport car waited for him.  (*Id.*)  While being transported on the gurney, Plaintiff passed a court holding tank full of inmates and numerous deputies.  (*Id.* at 4.)  Plaintiff was then placed into the backseat of the transport car and driven naked to the San Diego Central Jail ("SDCJ").  (*Id.* at 3.)

During the two-hour incident, Plaintiff was strapped to a gurney, handcuffed behind his back, naked. (*Id.*) Plaintiff "told the detectives his handcuffs were too tight[,] and he was in pain." (*Id.*) One of the deputies asked Defendant if he could loosen the cuffs. (*Id.*) Defendant responded, "[I]f he starts twitching, strap him down tighter." (*Id.* at 3–4.) Plaintiff claims Defendant refused to allow the deputies to adjust the overly tight handcuffs for a "prolonged period of time of at least 45 minutes to an hour." (*Id.* at 7–8.)

Plaintiff alleges that Defendant's "response was malicious and callous, made for the very purpose of causing harm and unnecessary and wanton infliction of pain" and constituted "cruel and unusual punishment." (*Id.* at 4.) Plaintiff further alleges that Defendant's response violated the Due Process Clause, which "protects pretrial detainees from that type of arbitrary and unconstitutional punishment." (*Id.*) Plaintiff also claims Defendant violated the San Diego County Sheriff's Department policy on use of restraints by not immediately adjusting the "misapplied handcuffs." (*Id.* at 8.) Plaintiff alleges the handcuffs caused physical pain and nerve damage to Plaintiff's hands, resulting in numbness and causing Plaintiff to sometimes drop objects. (*Id.* at 9.) Plaintiff hands also "shake when doing tedious tasks" because his hands are now "significantly weaker." (*Id.*)

Plaintiff further alleges that Defendant is "responsible and the cause of the unconstitutional humiliation and degradation of [Plaintiff] caused by [his] orders to hogtie and transfer Plaintiff naked and in pain from one jail to the next." (*Id.* at 4.) Plaintiff states that "[t]his use of force was embarrassing, degrading, and unreasonable" and caused Plaintiff "physical, emotional, and mental pain." (*Id.*) Plaintiff further claims that transferring him naked from one jail to the next in front of numerous inmates and deputies constituted excessive force, was objectively unreasonable, and demonstrated disregard for Plaintiff's due process rights and right to be free from punishment. (*Id.* at 7.)

Lastly, Plaintiff alleges that Defendant was deliberately indifferent to his serious medical needs because the San Diego County Sheriff's Department Detention Services Bureau—Manual of Policies and Procedures ("Manual") on the use of restraints provides that "[t]he Watch Commander shall ensure medical personnel are notified and present

during restraint placements," and Defendant failed to follow this policy.  (*Id.* at 9–10, 18.) The Manual further provides that a medical opinion on placement and retention of restraints shall be obtained as soon as possible, but no later than 30 minutes from the time of initial placement, and that the inmate shall be medically evaluated for continued retention at least every two hours thereafter.  (*Id.* at 10, 19.)  In addition, supervision of inmates placed in restraints shall be at least twice every 30 minutes.  (*Id.*)  Plaintiff complained of pain from the restraints for "at least 45 minutes," and no medical personnel was present during this time. (*Id.* at 11.)  A registered nurse ("RN") only appeared after the "prolonged period of time" of 45 minutes to an hour.  (*Id.*)

Plaintiff asserts claims in his 5AC against Defendant for excessive force, corporal punishment, cruel and unusual punishment, and deliberate indifference to serious medical needs.  (*Id.* at 1.)  Plaintiff alleges that Defendant violated his due process rights under the Fourteenth Amendment and Eighth Amendment (if applicable).  (*Id.*)  Plaintiff sues Defendant in his individual capacity and official capacity (if applicable).  (*Id.* at 1–2.) Plaintiff seeks nominal and punitive damages based on "the extreme mental and emotional/psyc[h]ological damage caused by the infliction of embarrass[s]ment, humiliation, degradation, anger, extreme emotional distress, mental suffering and emotional suffering." (*Id.* at 2.)  Plaintiff claims the events described in the 5AC caused "depression and PTSD" and "pain and injury to [his] shoulder, hands, and arm" including "nerve damage [and] nerve pain." (*Id.*)

### B.     Procedural Background

On June 21, 2016, Plaintiff commenced this 42 U.S.C. § 1983 action against Barbara Lee ("Lee"), Lt. Christine Harvel ("Harvel"), Kania, Captain Daniel Pena ("Pena"), Captain Flynn ("Flynn"), Sheriff William D. Gore ("Gore"), the County of San Diego, the San Diego Sheriff's Department, John Doe Doctors, Doctor Blake ("Blake"), and Lt. Snyder ("Snyder"), among others.  (ECF No. 1.)  On September 23, 2016, the Court dismissed Plaintiff's action for failure to state a claim upon which § 1983 relief can be granted pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1), with leave to amend.

(ECF No. 3.)  On November 16, 2016, Plaintiff filed a First Amended Complaint against Lee, John/Jane Doe Doctors, and the SDCJ Medical Supervisor.  (ECF No. 6.)  On February 7, 2017, the Court dismissed Plaintiff's First Amended Complaint as frivolous for repeating previously litigated claims and for failure to state a claim upon which § 1983 relief can be granted pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b), with leave to amend.  (ECF No. 8.)

Plaintiff filed a Second Amended Complaint against Lee, Kania, Harvel, Gore, John/Jane Doe Doctors, and John/Jane Doe Admin on March 30, 2017.  (ECF No. 9.)  On April 7, 2017, the Court dismissed Plaintiff's Second Amended Complaint as frivolous for repeating previously litigated claims and for failure to state a claim upon which § 1983 relief can be granted pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b), with leave to amend.  (ECF No. 10.)  Plaintiff filed a Third Amended Complaint on September 13, 2017, which was later stricken at Plaintiff's request because Plaintiff did not have time to "finish any of it" because he ran "out of time."  (ECF Nos. 27, 30, 32.)  On October 27, 2017, the Court ordered consolidation of this case and Plaintiff's other case (17-cv-0859-AJB-MDD) before Plaintiff filed the Fourth Amended Complaint in this case.  *See* Order Granting Plaintiff's Motion to Consolidate Cases, *James v. Gore, et al.*, No. 17-cv-00859-AJB (MDD) (S.D. Cal. Oct. 27, 2017), ECF No. 12.

On December 26, 2017, Plaintiff filed a Fourth Amended Complaint against Lee, Kania, Harvel, Blake, Snyder, Lt. Coyne, Lt. Kamoss, Lt. Montgomery, Flynn, Pena, Jane Doe x-ray technician, John/Jane Joe Doctors, John Doe SDCJ deputies, and Sheriff's John/Jane Doe Medical Admin. Review Committee members.  (ECF No. 43.)  On February 12, 2018, the Court dismissed all claims against each defendant with the exception of defendants Lee, Kania, Blake, John/Jane Doe Lieutenant, and John Doe Central Jail deputies for failure to state a claim upon which § 1983 relief could be granted pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b).  (ECF No. 50.)  Upon being served, Lee filed a motion to dismiss, and Lee and Kania filed a motion to strike materials attached to the Fourth Amended Complaint.  (ECF No. 64.)  The undersigned issued a Report and

Recommendation on the motions on August 21, 2018, recommending that Lee's motion to dismiss be granted and the motion to strike be denied.   (ECF No. 96.)   On February 22, 2019, Judge Battaglia adopted the Report and Recommendation and granted Plaintiff leave to amend.  (ECF No. 109.)  On October 2, 2019, Judge Battaglia granted a joint motion by the parties (ECF No. 136) and dismissed Lee, Blake, and all Doe defendants with prejudice.   (ECF No. 137.)   On November 4, 2019, Plaintiff filed the instant complaint, his 5AC, against only Kania.  (ECF No. 138.)

On November 18, 2019, Defendant filed the present motion to dismiss the 5AC. (ECF No. 144.)  Plaintiff filed an opposition (ECF No. 152), and Defendant filed a reply (ECF No. 153).

## II.    LEGAL STANDARD

### A.    Motion to Dismiss for Failure to State a Claim

On a motion to dismiss for failure to state a claim, the question is not whether the plaintiff will ultimately prevail at trial, but whether the complaint is sufficient to meet the federal court's pleading standards as explained in *Twombly* and *Iqbal*.  *Skinner v. Switzer*, 562 U.S. 521, 529–30 (2011).  Federal Rule of Civil Procedure 8 requires only a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2); *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Two tenets underlie *Twombly*: (1) the reviewing court must accept all *factual* allegations as true (legal conclusions and threadbare recitations of the cause of action's elements are not presumed true); and (2) the reviewing court must determine if those factual allegations, taken as true, plausibly suggest entitlement to relief.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009) (citing *Twombly*, 550 U.S. at 555–58).  Only a complaint that states a plausible claim for relief will survive a motion to dismiss.  *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 556).

A complaint must contain more than facts that merely create a suspicion of a legally cognizable cause of action; it must set forth facts that raise the alleged wrongdoing above the speculative level.  *Twombly*, 550 U.S. at 555.  A claim is plausible on its face when the

factual allegations allow the court to draw the reasonable inference that the defendant is liable for the alleged wrongdoing. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). The mere possibility of misconduct falls short of meeting this plausibility standard. *Id.* at 679; *see also Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009). A complaint alleging facts that are "merely consistent with" a defendant's liability does not cross the threshold between possibility and plausibility entitling the plaintiff to relief. *Moss*, 572 F.3d at 969 (quoting *Twombly*, 550 U.S. at 557).

### B.    Standards Applicable to *Pro Se* Litigants

*Pro se* complaints are to be construed liberally, particularly in a civil rights case. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). "[H]owever inartfully pleaded," *Haines v. Kerner*, 404 U.S. 519, 520 (1972), *pro se* complaints can only be dismissed if the plaintiff "can prove no set of facts in support of his claim which would entitle him to relief." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001) (citation omitted). Courts must use common sense and reasonable factual inferences when reading *pro se* complaints. *McKinney v. De Bord*, 507 F.2d 501, 504 (9th Cir. 1974). However, when construing the plaintiff's claims liberally, the court "may not supply essential elements of the claim that were not initially pled." *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

Before dismissing a *pro se* complaint for failure to state a claim, the court must give the plaintiff a statement of the complaint's deficiencies and an opportunity to amend unless it is absolutely clear from the complaint that the deficiencies cannot be overcome with amendment. *Karim-Panahi v. L.A. Police Dep't*, 839 F.2d 621, 623–24 (9th Cir. 1988); *see also James v. Giles*, 221 F.3d 1074, 1077 (9th Cir. 2000).

### C.    Supervisory Liability Under § 1983

Under § 1983, a plaintiff must prove: (1) the defendant deprived the plaintiff of a right, privilege, or immunity protected by the Constitution or laws of the United States; and (2) the defendant acted under color of state law. 42 U.S.C. § 1983. There is no vicarious liability under § 1983. *Iqbal*, 556 U.S. at 676. "A defendant may be held liable

as a supervisor under § 1983 if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (quoting *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989) (internal quotation marks omitted)).   A plaintiff "must show the supervisor breached a duty to plaintiff which was the proximate cause of the injury." *Id.*

The requisite causal connection can be established (1) by setting in motion a series of acts by others, or (2) by knowingly refusing to terminate a series of acts by others, which the supervisor knew or reasonably should have known would cause others to inflict a constitutional injury. *Id.* at 1207–08 (citing *Dubner v. City of San Francisco*, 266 F.3d 959, 968 (9th Cir. 2001)).   However, this is not to say supervisors may be held liable for their subordinates' unconstitutional actions under a theory of *respondeat superior*; supervisory officials may only be held liable for their own acts or omissions, which include "culpable action or inaction in the training, supervision, or control of [their] subordinates; for [their] acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others." *Id.* at 1208 (quoting *Watkins v. City of Oakland*, 145 F.3d 1087, 1093 (9th Cir. 1998)).   The supervisor need not be directly and personally involved in the constitutional deprivation in the same way as the officials who are on the scene inflicting the constitutional injury. *Starr*, 652 F.3d at 1205–07.

### D.   Qualified Immunity

"Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Kisela v. Hughes*, ––– U.S. –––, 138 S. Ct. 1148, 1152 (2018) (citation omitted). "A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, ––– U.S. –––, 136 S. Ct. 305, 308, (2015) (internal quotation marks and citation omitted). "[T]he clearly established right must be defined with specificity." *City of Escondido v. Emmons*, ––– U.S. –––, 139 S. Ct. 500, 503 (2019).   There does not need to be a case

directly on point for a right to be clearly established, but "existing precedent must have placed the statutory or constitutional question beyond debate." *Kisela*, 138 S. Ct. at 1152 (citation omitted).

However, "there can be the rare 'obvious case,' where the unlawfulness of the officer's conduct is sufficiently clear even though existing precedent does not address similar circumstances." *District of Columbia v. Wesby*, ⸻ U.S. ⸻, 138 S. Ct. 577, 590 (2018) (quoting *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004)). Thus, "[w]hen a violation is obvious enough to override the necessity of a specific factual analogue, . . . it is almost *always* wrong for an officer in those circumstances to act as he did." *Sharp v. County of Orange*, 871 F.3d 901, 912 (9th Cir. 2017).

Training materials and regulations are relevant, although not dispositive, to determining whether reasonable officers would have been on notice that their conduct was unreasonable. *Drummond ex rel. Drummond v. City of Anaheim*, 343 F.3d 1052, 1059–60 (9th Cir. 2003); *see also Hope v. Pelzer*, 536 U.S. 730, 741–42 (2002) (considering an Alabama Department of Corrections regulation and a Department of Justice report in its qualified immunity analysis). "Because the focus is on whether the officer had fair notice that [his or] her conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct." *Kisela*, 138 S. Ct. at 1152 (citation omitted).

"Qualified immunity is an affirmative defense that must be raised by a defendant." *Groten v. California*, 251 F.3d 844, 851 (9th Cir. 2001). "Thus, a Rule 12(b)(6) dismissal is not appropriate unless [a court] can determine, based on the complaint itself, that qualified immunity applies." *Id.*; *see also Baker v. Villalobos*, No. 2:18-cv-2301-PA (GJS), 2019 WL 2234474, at *9 (C.D. Cal. Mar. 4, 2019) ("At the motion to dismiss stage, the qualified immunity inquiry must be undertaken in light of the factual allegations of the Complaint and the reasonable inferences drawn from these allegations." (citing *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996)), *adopted by* 2019 WL 2234469 (C.D. Cal. May 21, 2019).

///

## III.   DISCUSSION

To prevail on a § 1983 claim, Plaintiff must show that while acting under color of state law, Defendant violated a constitutional right or federal statutory right.   *Jones v. Williams*, 297 F.3d 930, 934 (9th Cir. 2002).   Defendant moves to dismiss Plaintiff's 5AC on the following grounds: (1) the excessive force claim is incorrectly alleged under the Fourteenth and Eighth Amendments; (2) the excessive force claim fails when analyzed under the Fourth Amendment; (3) the deliberate indifference claim fails as Plaintiff cannot allege a serious medical need or conduct demonstrating deliberate indifference; and (4) Defendant is entitled to qualified immunity because no clearly established law provided notice that his decisions regarding Plaintiff's transport with a sheet, under the circumstances alleged, were clearly unconstitutional.   (*See* ECF Nos. 144-1; 153.) Defendant also moves to dismiss Plaintiff's claims brought against him in his official capacity.   (ECF No. 144-1 at 8–9.)

### A.   Official Capacity

Defendant moves to dismiss Plaintiff's claims against Defendant in his official capacity.   (ECF No. 144-1 at 8–9.)   In addition to suing Defendant in his individual capacity, Plaintiff also sues Defendant for damages in his official capacity.   (5AC at 1–2.)

Official-capacity damages claims against individual officers of a local government entity are claims against the entity itself.   *See Hill v. Baca*, No. 08-03834 CAS (AJW), 2010 WL 1727655, at *5 (C.D. Cal. Apr. 26, 2010) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978)); *Green v. Baca*, 306 F. Supp. 2d 903, 907 (C.D. Cal. 2004) ("By suing [the Los Angeles County Sheriff] in his official capacity, plaintiff has asserted claims against Los Angeles County and/or the Los Angeles Sheriff's Department . . . .").

However, a local government entity "may not be sued under § 1983 for an injury inflicted solely by its employees or agents.   Instead, it is when execution of a government's policy or custom . . . inflicts the injury that the government as an entity is responsible under § 1983."   *Monell*, 436 U.S. at 694.   Thus, a plaintiff must establish that "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance,

regulation, or decision officially adopted and promulgated by that body's officers," or that the action was "visited pursuant to a governmental 'custom[.]'" *Id.* at 690–91.  In other words, a plaintiff must show that deliberate action attributable to the local government entity itself "is the 'moving force' behind the plaintiff's deprivation of federal rights." *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 400 (1997) (quoting *Monell*, 436 U.S. at 694).

Here, Plaintiff has not identified any policy, ordinance, regulation, or custom of San Diego County (or the San Diego County Sheriff's Department) that led to a deprivation of Plaintiff's constitutional rights.  The only policy Plaintiff identifies in the 5AC is one he contends Defendant did not follow; he does not allege that execution of the policy itself inflicted Plaintiff's injuries.

Accordingly, the Court **RECOMMENDS** that Defendant's motion to dismiss Plaintiff's claims against Defendant in his official capacity be **GRANTED**.

## B.   Overly Tight Handcuffing (Excessive Force)

### 1.   Legal Standard

When addressing an excessive force claim brought under § 1983, the court's "analysis begins by identifying the specific constitutional right allegedly infringed by the challenged application of force." *Graham v. Connor*, 490 U.S. 386, 394 (1989).  The Due Process Clause of the Fourteenth Amendment "protects a pretrial detainee from the use of excessive force that amounts to punishment." *Id.* at 395 n.10.[1]  In order to demonstrate

---

[1]   The specific constitutional right is determined by Plaintiff's custodial status. *Pierce v. Multnomah County*, 76 F.3d 1032, 1042 (9th Cir. 1996).  The Fourth Amendment "sets the applicable constitutional limitations on the treatment of an arrestee detained without a warrant up until the time such arrestee is released or found to be legally in custody based upon probable cause for arrest." *Id.* at 1043.  Thereafter, the Due Process Clause of the Fourteenth Amendment protects pretrial detainees from excessive force that amounts to punishment. *Graham*, 490 U.S. at 395 n.10.  The Eighth Amendment governs excessive force claims "after conviction and sentence." *Pierce*, 76 F.3d at 1042 (quoting *Graham*, 490 U.S. at 392 n.6).  Here, Defendant analyzes Plaintiff's excessive force claim under the Fourth Amendment.  (ECF No. 144-1 at 4–6.)  However, Plaintiff alleges that he was a

excessive force, "a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable." *Kingsley v. Hendrickson*, 576 U.S. 389, 396–97 (2015). Courts "cannot apply this standard mechanically," but must examine the "facts and circumstances of each particular case." *Id.* at 397 (citation omitted). Specifically, courts "must make this determination from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." *Id.*

Courts "must also account for the legitimate interests that stem from [the government's] need to manage the facility in which the individual is detained, appropriately deferring to policies and practices that in th[e] judgment of jail officials are needed to preserve internal order and discipline and to maintain institutional security." *Id.* (quoting *Bell v. Wolfish*, 441 U.S. 520, 540, 547 (1979) (internal quotation marks omitted)). The following considerations may bear on the reasonableness or unreasonableness of the force used: "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Id.* This list is not exclusive. *Id.*

2. Whether Plaintiff Has Alleged a Violation of a Constitutional Right

Plaintiff alleges that while he was a pretrial detainee in the custody of the San Diego Sheriff's Department, he was handcuffed behind his back by two deputies and placed face

---

pretrial detainee, not an arrestee, at the time of the alleged violation and nothing attached to the 5AC suggests otherwise. Therefore, the Court analyzes his excessive force claim under the Fourteenth Amendment. However, even if it turns out that Plaintiff is a pre-arraignment pretrial detainee and therefore, his claim is under the Fourth Amendment, the analysis does not change because under either Amendment, the analysis turns on the reasonableness of the officers' actions under the circumstances. *See Moody v. Simms*, No. 15-cv-04198-JSC, 2017 WL 1196796, at *5 (N.D. Cal. Mar. 31, 2017).

down on a gurney unclothed.  (5AC at 3.)  While in this condition, Plaintiff was escorted to a processing area and then a holding tank where he was x-rayed.  (*Id.*)  The x-ray showed two keys inside Plaintiff, one a handcuff key and the other a master lock key.  (*Id.*)  After Plaintiff removed the keys from his anal cavity and gave the keys to the deputies, Defendant ordered his deputies to "hogtie" Plaintiff, place him on a gurney, and take him outside to the parking lot, where a Sheriff's transport car waited to transport him to SDCJ.  (*Id.* at 3, 6.)  Plaintiff remained naked and handcuffed during the transfer to SDCJ.  (*Id.* at 3.)

Plaintiff claims that during this entire two-hour incident, he was strapped to a gurney, naked, and handcuffed behind his back.  (*Id.* at 3, 7.)  Plaintiff alleges that Deputy Borden, at some point in time, "misappli[ed]" the handcuffs in a manner that was too tight.  (*Id.* at 7–8.)  Plaintiff claims that he told deputies his handcuffs were too tight and that he was in pain.  (*Id.* at 3.)  However, when a deputy asked Defendant, who was the supervisor present, if he could loosen the handcuffs, Defendant responded, "[I]f he starts twitching, strap him down tighter."  (*Id.* at 3–4, 9.)  Plaintiff responded, "[M]y shoulder is on fire about to pop off."  (*Id.* at 9.)  Plaintiff also continuously moved his hands throughout the incident while cuffed in an attempt to try and keep blood flow in his hands.  (*Id.*)

Plaintiff alleges that Defendant's refusal to allow the deputies to adjust the handcuffs for a prolonged period—at least 45 minutes to an hour—caused him to suffer "unnecessary and wanton infliction of pain."  (*Id.* at 7–8.)  Plaintiff alleges Defendant's actions caused not only physical pain, but nerve damage to Plaintiff's hands, which causes Plaintiff's hands to feel numb and shake and leads Plaintiff to sometimes drop objects because he cannot feel them.  (*Id.* at 9.)  Plaintiff claims his hands are significantly weaker as a result of the handcuffing.  (*Id.*)

It is well-established that overly tight handcuffing can constitute excessive force.  *See Wall v. County of Orange*, 364 F.3d 1107, 1112 (9th Cir. 2004); *LaLonde v. County of Riverside*, 204 F.3d 947, 960 (9th Cir. 2000); *Thompson v. Lake*, 607 F. App'x 624, 625–26 (9th Cir. 2015).  Although the level at which tight handcuffing becomes unconstitutional is not well defined, the Ninth Circuit has found a triable issue when the handcuffs caused

demonstrable injury or unnecessary pain, or when officers ignored or refused requests to loosen the handcuffs once alerted that the handcuffs were too tight. *See Stevenson v. Jones*, 254 F. Supp. 3d 1080, 1091–92 (N.D. Cal. 2017) (collecting cases); *Smith v. Sergent*, No. 2:15-cv-0979 GEB DB P, 2017 WL 4284659, at *5–6 (E.D. Cal. Sept. 27, 2017) (collecting cases).

Here, for the reasons discussed below, the Court finds that Plaintiff has plausibly alleged a Fourteenth Amendment Due Process Claim of excessive force against Defendant.

### a. *Use of Force Was Purposeful or Knowing*

In order to be held liable under § 1983, "the defendant must possess a purposeful, a knowing, or possibly a reckless state of mind," as "'liability for *negligently* inflicted harm is categorically beneath the threshold of constitutional due process.'" *Kingsley*, 576 U.S. at 396 (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998)). Here, Plaintiff alleges that although Defendant did not personally apply the "too tight" handcuffs, he was allegedly informed of the use of force, observed the use of force, and not only purposefully failed to act, but also directed that the use of force continue for an extended period of time. Accordingly, the Court finds that Plaintiff has plausibly alleged that Defendant acted purposefully or knowingly with respect to the force used against Plaintiff.

### b. *Use of Force was Objectively Unreasonable*

In considering whether Plaintiff has plausibly alleged that the use of force by Defendant was objectively unreasonable, the Court considers "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Kingsley*, 576 U.S. at 397. In evaluating the amount of force used, courts may consider the severity of the alleged injury. *See Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) ("The extent of injury may also provide some indication of the amount of force applied."). Courts may infer from the minor nature of a plaintiff's injuries that the force applied was minimal. *Felarca v. Birgeneau*, 891 F.3d 809, 817 (9th Cir.

2018) (citing *Jackson v. City of Bremerton*, 268 F.3d 646, 652 (9th Cir. 2001)).  "While injuries are not a precondition to § 1983 liability, their absence can suggest a lesser degree of force when that force is of the type likely to cause injuries."  *Id.* (citing *Santos v. Gates*, 287 F.3d 846, 855 (9th Cir. 2002)).

Here, Plaintiff attaches his medical charts to the 5AC.  (5AC at 34.)  Plaintiff saw a medical provider from the San Diego Sheriff's Department for shoulder pain on the same day as the incident.  (*Id.* at 34–36.)  The provider noted the following: "no swelling redness noted on R shoulder, good cap refill w/ <3 sec. noted on both arms, able to wiggle fingers on both arms."  (*Id.* at 35.)  Plaintiff was prescribed over-the-counter pain medication (Motrin or Tylenol) for a muscular strain.  (*Id.* at 34–35.)  Approximately two days after the incident, Plaintiff saw another medical provider from the San Diego Sheriff's Department at SDCJ.  (*Id.* at 36.)  The provider noted the following about Plaintiff's right shoulder: "No obvious deformity.  ROM full and intact.  Mild tenderness on the shoulder girdle muscle.  No redness."  (*Id.*)  The foregoing suggests that Plaintiff's injury was minor and that the force applied was minimal.  However, Plaintiff alleges in the 5AC that his shoulder felt like it was "on fire about to pop off" as a result of the too-tight handcuffing.  (*Id.* at 9.)  He further alleges injuries that are not necessarily visible in nature, namely pain and ongoing nerve damage.  (*Id.*)  Based on these allegations, Plaintiff plausibly alleges that the force applied was more than minimal and his injuries were not minor.

Plaintiff also plausibly alleges that there was no need to use overly tight handcuffs for an extended period of time.  (*Id.* at 3–11.)  Plaintiff acknowledges that he was hiding prison keys in his anal cavity.  (*Id.* at 3, 6, 8.)  However, he further alleges that he was naked, and therefore clearly unarmed, and on a gurney surrounded by deputies.  (*Id.* at 3–4, 6.)  He contends that there were alternative methods of restraint and alleges that the deputies present suggested that an alternative method be used, which Defendant refused.  (*Id.* at 3, 6–8.)  Specifically, Plaintiff alleges the deputies asked Defendant if they could put waist chains on Plaintiff and/or adjust the cuffs and he disallowed it, instead directing them to "strap him down tighter if he starts to twitch."  (*Id.* at 3–4, 8–9.)  These allegations

suggest that the situation did not require overly tight handcuffing and that other options were available.  Lastly, the 5AC contains no admissions that Plaintiff was resisting, and Plaintiff denies that he had a history of attacking deputies, weapons charges, or violence towards deputies.  (*Id.* at 6, 9.)

Based on the foregoing, the Court finds that Plaintiff has plausibly alleged a violation of the Due Process Clause of the Fourteenth Amendment with respect to the overly tight handcuffing.

### 3.   Whether Defendant is Entitled to Qualified Immunity

Defendant is entitled to qualified immunity unless: (1) the facts alleged, taken in the light most favorable to Plaintiff, show that Defendant's conduct violated a constitutional right; and (2) the right at issue was clearly established in light of the specific context of the case at the time of the alleged misconduct.  *Clairmont v. Sound Mental Health*, 632 F.3d 1091, 1100 (9th Cir. 2011); *see also Wesby*, 138 S. Ct. at 589; *Sharp*, 871 F.3d at 909.  As discussed above, the Court finds that Plaintiff has plausibly alleged that Defendant committed a constitutional violation.  The Court then looks to whether Defendant's specific alleged misconduct violated "clearly established" federal law at the time of the incident.

At the time the incident occurred, July 3, 2014, the right at issue–Plaintiff's Fourteenth Amendment due process right to be free from excessive force in the form of overly tight handcuffing–was clearly established such that a reasonable officer would have understood his conduct to be unlawful in that situation.   The Ninth Circuit has long recognized that overly tight handcuffing may constitute excessive force, particularly where the handcuffs caused demonstrable injury or unnecessary pain, or when officers ignored or refused requests to loosen the handcuffs once alerted that the handcuffs were too tight.  *See Thompson*, 607 F. App'x at 625–26 (denying qualified immunity when tight handcuffs caused the plaintiff unnecessary pain and he requested police to loosen them); *Meredith v. Erath*, 342 F.3d 1057, 1063 (9th Cir. 2003) (denying qualified immunity when the plaintiff was kept for 30 minutes in overly tight handcuffs causing her unnecessary pain); *LaLonde*, 204 F.3d at 952, 960 (holding that tight handcuffing claim should have gone to the jury

when officers refused the plaintiff's request to loosen painful handcuffs); *Smith*, 2017 WL 4284659, at *6 (stating "most courts in this circuit have held that a plaintiff attempting to prove excessive force must show either a demonstrable injury or that he complained about the handcuffs being too tight and was ignored"; collecting cases).

Accordingly, at this stage of the proceedings, the Court finds that Defendant is not entitled to dismissal based upon qualified immunity and the Court **RECOMMENDS** that Defendant's motion to dismiss Plaintiff's excessive force claim be **DENIED**.[2]

### C.    Naked Transfer

Next, Plaintiff alleges that Defendant violated his constitutional rights when he ordered that Plaintiff be hogtied and transferred naked and in pain from one jail to the next in a public manner.   (5AC at 3–7.)   Plaintiff contends these orders constituted "unconstitutional humiliation and degradation" and "corporal punishment" and that the transfer was "embarrassing, degrading, and unreasonable," causing "physical, emotional, and mental pain."  (*Id.* at 4–5.)  Defendant analyzes these allegations under the Fourth Amendment's prohibition on unreasonable searches and seizures.  (ECF No. 144-1 at 4–6.) However, as discussed below, the Court finds that these allegations implicate Plaintiff's Fourteenth Amendment right to bodily privacy and right to be free from punishment.

#### 1.    Fourteenth Amendment Right to Bodily Privacy

##### a.    *Legal Standard*

Pretrial detainees have a right to bodily privacy.  *Byrd v. Maricopa Cnty. Bd. of Supervisors*, 845 F.3d 919, 923 (9th Cir. 2017) (citing *Michenfelder v. Sumner*, 860 F.2d

---

[2]    Defendant argues that Plaintiff's excessive force claim fails because the "bare allegation that he was strip searched and transported unclothed on one occasion" is insufficient, but Defendant does not address Plaintiff's allegations regarding overly tight handcuffing. (*See* ECF No. 144-1 at 5.)  The Court does not address Defendant's argument that "strip searches do not violate the Fourth Amendment rights of prisoners" because nowhere in the 5AC does Plaintiff allege that the strip search and x-ray to remove the keys were unreasonable.  The Court does not construe the 5AC to include such a claim.

328, 333 (9th Cir. 1988)); *see also Vazquez v. County of Kern*, 949 F.3d 1153, 1160 (9th Cir. 2020).  Generally, the right does not apply where observation of a pretrial detainee's naked body is "only infrequent and casual" or "at [a] distance," and it is "reasonably related to prison needs." *Michenfelder*, 860 F.2d at 334; *see e.g.*, *Byrd*, 845 F.3d at 922, 924 (allegations that the defendants' policy of having female prison guards "regularly" view a male pretrial detainee's bathroom and shower use from four to five feet away violated his Fourteenth Amendment right to bodily privacy and could not be dismissed without an answer); *Vazquez*, 949 F.3d at 1160–62 (reversing summary judgment in favor of the defendant on the plaintiff's Fourteenth Amendment right to bodily privacy claim where the male defendant watched the female plaintiff in the shower multiple times and a reasonable jury could conclude the alleged viewings were not "infrequent and casual").

   b.   *Whether Plaintiff Has Alleged a Violation of a Constitutional Right*

   Here, Plaintiff has sufficiently alleged a violation Plaintiff's right to bodily privacy by Defendant.  The reason Plaintiff was initially stripped clearly served a legitimate governmental objective—namely, identification and removal of a handcuff key and master lock key from Plaintiff's anal cavity.  However, after the keys were removed and handed to deputies, Defendant allegedly ordered that Plaintiff be placed "hogtied naked" on a gurney and pushed down a corridor in front of a "holding tank full of inmates and numerous deputies" and then driven naked twenty miles to SDCJ.  (5AC at 3–4, 7.)  Thus, Plaintiff alleges that Defendant's orders caused him to be observed by strangers, including at least one member of the opposite gender (5AC at 14), and which he found embarrassing and degrading and the cause of great emotional distress.  *Cf. Sepulveda v. Ramirez*, 967 F.2d 1413, 1416 (9th Cir. 1992) (finding a male parole officer who observed a female parolee while she used the toilet, when his view was "neither obscured nor distant," violated her clearly established right to bodily privacy).

In his motion to dismiss, Defendant argues that "[t]he justification and method of transporting Plaintiff from GBDF to SDCJ was objectively reasonable and tied to legitimate penological interests under the circumstances" for the following reasons:

> (1) Plaintiff was able to obtain and hide contraband to facilitate an escape while he was at GBDF. Thus, it was imperative to immediately remove him from the facility to hinder further escape attempts or security issues; and (2) Plaintiff had to be x-rayed a second time after the keys were removed from his body to make sure that he was not in possession of any additional contraband. Until he was x-rayed again, transporting deputies could not cover Plaintiff with a blanket or sheet because he could potentially remove a weapon or additional contraband from his body during transport. To cover him under these circumstances would compromise institutional security and the safety of the transporting deputies. Jail staff could not simply take Plaintiff's word that he removed all of the "metallic" object he had hidden inside of his body. Only a second set of x-rays could provide that confirmation. Those x-rays were taken upon arrival at SDCJ. (5AC, Ex. 7, Crime/Incident Report, ¶ 5.)

(ECF No. 144-1 at 5–6.)

Defendant's arguments would suggest that transferring Plaintiff hogtied and naked served a legitimate governmental objective. However, when ruling on a motion to dismiss, the Court may only consider the facts alleged in the complaint, documents attached to the complaint, documents relied upon but not attached to the complaint when authenticity is not contested, and matters of which the Court takes judicial notice. *Lee v. City of Los Angeles*, 250 F.3d 668, 688–89 (9th Cir. 2001). The Crime/Incident Report, which is attached to Plaintiff's 5AC and relied on by Defendant, does not state or imply that it was "imperative to immediately remove [Plaintiff] from the facility" or specify why Plaintiff could not be covered with a blanket or sheet or be allowed to put on clothes during transport. (*See* ECF No. 144-1 at 5–6; 5AC at 49.) Moreover, the Crime/Incident Report does not indicate why Plaintiff could not be x-rayed a second time at GDBF, if such an x-ray was necessary to ensure that all weapons and/or contraband had been removed. The Crime/Incident Report does refer to a second set of x-rays at SDCJ, but it does not state the

purpose of such an x-ray.  Regardless, Plaintiff denies that a second set of x-rays was ever taken upon arrival at SDCJ.  (ECF No. 152 at 2.)

For these reasons, the Court finds that Plaintiff has plausibly alleged a Fourteenth Amendment right to bodily privacy claim with respect to his naked transfer to SDCJ after he had removed and turned over the keys.

### c.   *Whether Defendant is Entitled to Qualified Immunity*[3]

As Plaintiff has plausibly alleged that Defendant committed a constitutional violation, the Court now turns to examine whether Defendant's specific alleged misconduct violated clearly established federal law at the time of the incident.

The right to bodily privacy under the Fourteenth Amendment was established in the Ninth Circuit in 1963.  *Sepulveda*, 967 F.2d at 1415–16 (citing *York v. Story*, 324 F.2d 450 (9th Cir. 1963)).  The Ninth Circuit extended "this right to prison inmates in 1985," *id.* (citation omitted), and has long held that a pretrial detainee possesses greater constitutional rights than prisoners, *Stone v. City of San Francisco*, 968 F.2d 850, 857 n.10 (9th Cir. 1992).  *See Vazquez*, 949 F.3d at 1160; *Byrd*, 845 F.3d at 923; *cf. Sepulveda*, 967 F.2d at 1416 (stating in the context of a bodily privacy claim that the constitutional rights of parolees "are even more extensive than those of inmates").

An inmates' right to bodily privacy may be limited by "the circumstances of institutional life," but it was clearly established as of 2014 that "*gratuitous* invasions of privacy violate the Fourteenth Amendment."  *Hydrick v. Hunter*, 500 F.3d 978, 1000 (9th Cir. 2007) (emphasis added) (citing *Grummett v. Rushen*, 779 F.2d 491, 494 (9th Cir.

---

[3]   In his motion to dismiss, Defendant does not make detailed arguments specific to each claim in support of his assertion of qualified immunity.  Instead, Defendant asserts generally that "there was no clearly established precedent as of 2014 that provided notice to [Defendant] or any jail officials that transporting Plaintiff between jail facilities under the circumstances they faced was clearly unconstitutional."  (ECF No. 144-1 at 10.) Notwithstanding this, the Court will address qualified immunity in the context of each of Plaintiff's individual claims.

1985)), *vacated and remanded on other grounds*, 556 U.S. 1256 (2009).  Whether or not Defendant committed a "gratuitous" invasion of Plaintiff's right to bodily privacy is a highly factual inquiry and here the facts are not fully developed.  *See id.*  In *Grummett*, for example, the Ninth Circuit, in affirming summary judgment in favor of the defendants, "considered the gender of those prison officials who viewed inmates, the angle and duration of viewing, and the steps the prison had taken to minimize invasions of privacy." *Id.* (citing *Grummett*, 779 F.2d at 494–95).  Such facts are not available to the Court at this stage of the proceedings.  However, as Plaintiff may be able to state a violation of clearly established law based on the allegations in the 5AC, the Court will not dismiss his bodily privacy claim at this time.  *See Groten*, 251 F.3d at 851.

Accordingly, the Court **RECOMMENDS** that Defendant's motion to dismiss Plaintiff's bodily privacy claim with respect to his naked transfer to SDCJ after removing and turning over the keys be **DENIED**.

### 2. Fourteenth Amendment Right to be Free from Punishment

#### a. *Legal Standard*

Under the Due Process Clause of the Fourteenth Amendment, a pretrial detainee "may not be punished prior to an adjudication of guilt."  *Bell*, 441 U.S. at 535; *see also Gary H. v. Hegstrom*, 831 F.2d 1430, 1432 (9th Cir. 1987) (noting the Fourteenth Amendment "standard applies to conditions of confinement when detainees . . . have not been convicted").  However, "[n]ot every disability imposed during pretrial detention amounts to 'punishment' in the constitutional sense."  *Bell*, 441 U.S. at 537.  "A court must decide whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose."  *Id.* at 538.

"For a particular governmental action to constitute punishment, (1) that action must cause the detainee to suffer some harm or 'disability,' and (2) the purpose of the governmental action must be to punish the detainee."  *Vazquez*, 949 F.3d at 1163 (quoting *Demery v. Arpaio*, 378 F.3d 1020, 1029 (9th Cir. 2004)).  "[T]o constitute punishment, the harm or disability caused by the government's action must either significantly exceed, or

be independent of, the inherent discomforts of confinement." *Id.* (citing *Demery*, 378 F.3d at 1030). Once harm is established, the court considers "whether this harm is imposed 'for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose.'" *Id.* (citing *Demery*, 378 F.3d at 1030).

> **b.** *Whether Plaintiff Has Alleged a Violation of a Constitutional Right*

Here, for largely the same reasons set forth above in analyzing Plaintiff's bodily privacy claim, Plaintiff has alleged facts from which a jury could find that Defendant violated his Fourteenth Amendment right to be free from punishment. *See Vazquez*, 949 F.3d at 1163–64. First, Plaintiff has sufficiently alleged that Defendant's conduct caused him harm outside the inherent discomforts of confinement. *Cf. Demery*, 378 F.3d at 1030 (finding that Sheriff Arpaio's practice of streaming images of pretrial detainees on the web constitutes a harm). Second, Plaintiff has sufficiently alleged that Defendant's alleged conduct did not serve a legitimate governmental objective, and Defendant's arguments to the contrary are unavailing at this stage of the proceedings, as they are based upon factual allegations which the Court cannot consider in the context of a motion to dismiss.

Accordingly, the Court finds that Plaintiff has plausibly alleged that Defendant violated his Fourteenth Amendment right to be free from punishment with respect to his naked transfer to SDCJ after removing and turning over the keys.

> **c.** *Whether Defendant is Entitled to Qualified Immunity*[4]

It was clearly established by 2014 that "under the Due Process Clause, a [pretrial] detainee may not be punished prior to an adjudication of guilt in accordance with due process of law." *Bell*, 441 U.S. at 535; *see also Demery*, 378 F.3d at 1028. To qualify as an unconstitutional punishment, the harm itself does not need to be "independently cognizable as a separate constitutional violation." *Demery*, 378 F.3d at 1030. However,

---

[4] *See supra* note 3.

as discussed above, the right to bodily privacy under the Fourteenth Amendment has also long been established in the Ninth Circuit and was established at the time of the events in the 5AC. *See Stone*, 968 F.2d at 857 n.10; *Vazquez*, 949 F.3d at 1160, 1165–66; *Byrd*, 845 F.3d at 923. Specifically, by 2014, it was "clearly established that the Fourteenth Amendment protects a sphere of privacy, and the most 'basic subject of privacy . . . the naked body.'" *Hydrick*, 500 F.3d at 1000 (9th Cir. 2007) (quoting *Grummett*, 779 F.2d at 494).

As with Plaintiff's bodily privacy claim, determining whether Defendant is entitled to qualified immunity as to the claim that the naked transport violated Plaintiff's right to be free from pretrial punishment is a highly factual inquiry. The Court does not have sufficient facts before it at this time to make such a determination. As Plaintiff may be able to prove a violation of his right to be free from punishment under the Fourteenth Amendment that was clearly established at the time based on the allegations in the 5AC, the Court finds that this claim is not appropriate for dismissal on the grounds of qualified immunity at this stage of the proceedings. *See Groten*, 251 F.3d at 851.

Accordingly, the Court **RECOMMENDS** that Defendant's motion to dismiss Plaintiff's right to be free from punishment claim with respect to his naked transfer to SDCJ after removing and turning over the keys be **DENIED**.

### D. Deliberate Indifference to Serious Medical Needs

#### 1. Legal Standard

Deliberate indifference to a pretrial detainee's serious medical needs violates the Fourteenth Amendment's Due Process Clause. *Gibson v. County of Washoe*, 290 F.3d 1175, 1187 (9th Cir. 2002). A pretrial detainee's due process claim "must be evaluated under an objective deliberate indifference standard." *Gordon v. County of Orange*, 888 F.3d 1118, 1124–25 (9th Cir. 2018) (citing *Castro v. County of Los Angeles*, 833 F.3d 1060, 1070 (9th Cir. 2016)). The elements of a pretrial detainee's medical care claim against an individual defendant are as follows:

(i) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (ii) those conditions put the plaintiff at substantial risk of suffering serious harm; (iii) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (iv) by not taking such measures, the defendant caused the plaintiff's injuries.

*Id.* at 1125. "With respect to the third element, the defendant's conduct must be objectively unreasonable, a test that will necessarily 'turn[] on the facts and circumstances of each particular case.'" *Castro*, 888 F.3d. at 1071 (quoting *Kingsley*, 576 U.S. at 397). The "'mere lack of due care by a state official' does not '"deprive" an individual of life, liberty, or property under the Fourteenth Amendment.'" *Id.* (quoting *Daniels v. Williams*, 474 U.S. 327, 330–31 (1986)). Thus, the plaintiff must "prove more than negligence but less than subjective intent—something akin to reckless disregard." *Id.*

### 2. Analysis

Defendant moves to dismiss Plaintiff's deliberate indifference to serious medical needs claim for failure to state a claim and based upon qualified immunity. (ECF No. 144-1 at 6–10.) "Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Kisela*, 138 S. Ct. at 1152 (citation omitted). As the focus of the qualified immunity analysis is "on whether the officer had fair notice that [his or] her conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct." *Id.* (citation omitted). Because the Court concludes that Defendant is entitled to qualified immunity, the Court does not address Defendant's other argument that Plaintiff fails to state a claim upon which relief can be granted.[5]

---

[5] Defendant recognizes that the Ninth Circuit's decision in *Gordon* changed the deliberate indifference standard applicable to a pretrial detainee's medical care claim. (*See* ECF No. 144-1 at 7.) Defendant contends, however, that "*Gordon*'s new objective

At the time of the events in the 5AC in 2014, it was clearly established law that deliberate indifference to a pretrial detainee's serious medical needs violated the Due Process Clause of the Fourteenth Amendment. *See Horton by Horton*, 915 F.3d at 599. However, under Ninth Circuit law at the time, "Fourteenth Amendment claims that officers acted with deliberate indifference to the medical needs of a pretrial detainee were governed by the same 'deliberate indifference' standard as Eighth Amendment claims for failure to prevent harm to convicted prisoners." *Id.*; *see also Clouthier v. County of Contra Costa*, 591 F.3d 1232, 1241–42 (9th Cir. 2010), *overruled by Castro v. County of Los Angeles*, 833 F.3d 1060 (9th Cir. 2016) (en banc); *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998).

In order to prevail on an Eighth Amendment claim for inadequate medical care, a plaintiff must show "deliberate indifference" to his "serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). "This includes 'both an objective standard—that the deprivation was serious enough to constitute cruel and unusual punishment—and a subjective standard—deliberate indifference.'" *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014) (quoting *Snow v. McDaniel*, 681 F.3d 978, 985 (9th Cir. 2012*), overruled in part on other grounds by Peralta v. Dillard*, 744 F.3d 1076 (9th Cir. 2014) (en banc)).

To meet the objective element of the standard, a plaintiff must demonstrate the existence of a serious medical need. *Estelle*, 429 U.S. at 104. Such a need exists if failure to treat the injury or condition "could result in further significant injury" or cause "the unnecessary and wanton infliction of pain." *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir.

---

deliberate indifference standard for medical care claims has no application to this case because it was not the standard in 2014." (*Id.* at 7 n.1.) The Court disagrees. In determining whether a plaintiff sufficiently alleges a constitutional violation, the Court looks to currently applicable constitutional standards. *See Horton by Horton v. City of Santa Maria*, 915 F.3d 592, 599, 602 (9th Cir. 2019); *Rankin v. Klevenhagen*, 5 F.3d 103, 108 (5th Cir. 1993). It is only when the Court turns to assess the objective reasonableness of the official's conduct in determining qualified immunity that the Court references the law as it existed at the time of the conduct in question. *See id.*

2006) (quoting *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992) (internal quotation marks omitted), *overruled in part on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (en banc)).  Indications that a plaintiff has a serious medical need include "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *McGuckin*, 974 F.2d at 1059–60.

A prison official is deliberately indifferent under the subjective element of the test only if the official "knows of and disregards an excessive risk to inmate health and safety." *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (quoting *Gibson*, 290 F.3d at 1187). This "requires more than ordinary lack of due care." *Farmer v. Brennan*, 511 U.S. 825, 835 (1994) (quoting *Whitley v. Albers*, 475 U.S. 312, 319 (1986)) (internal quotation mark omitted).  "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.  Deliberate indifference "may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care." *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988).

In conducting a qualified immunity analysis on a deliberate indifference claim, the court's inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." *Horton by Horton*, 915 F.3d at 600 (quoting *Saucier v. Katz*, 533 U.S. 194, 201 (2001)).  Therefore, the specific question here is whether case law, at the time of the incident, sufficiently clarified when a detainee's complaint of overly tight handcuffing required immediate medical attention.  *See id.*  In addition, given that the subjective component of the Eighth Amendment deliberate indifference analysis does not fit easily with the qualified immunity inquiry, which is an objective one, the court's qualified immunity analysis should concentrate on the objective aspects of the deliberate

indifference standard.  *See id.* (citing *Estate of Ford v. Ramirez-Palmer*, 301 F.3d 1043, 1049 (9th Cir. 2002)).

Here, Plaintiff's allegation that Defendant was deliberately indifferent to his serious medical needs is partially premised on Defendant's alleged failure to follow the San Diego County Sheriff's Department's Manual on Use of Restraint Equipment.  (5AC at 9–10, 18–19.)  Plaintiff alleges that he complained of pain due to the overly tight handcuffs for at least 45 minutes and stated, "My shoulder is on fire about to pop off," but no medical personnel was present until an RN appeared at the end of the incident.  (*Id.* at 9, 11.)  Plaintiff contends that "[m]edical staff being present is equal to a serious medical need" and that he was denied the right to proper medical treatment when Defendant failed to ensure and follow policy.  (*Id.* at 11.)  However, the San Diego County Sheriff's Department's policy does not (and did not at the time) determine the relevant standards to be applied to a § 1983 claim.  *See* 42 U.S.C. § 1983; *see also Galen v. County of Los Angeles*, 477 F.3d 652, 662 (9th Cir. 2007); *Dillman v. Tuolumne County*, No. 1:13-CV-00404 LJO, 2013 WL 1907379, at *9 (E.D. Cal. May 7, 2013).

Plaintiff's allegation that Defendant was deliberately indifferent to his serious medical needs is also premised on Defendant's failure to respond to Plaintiff's complaints of pain and apparent discomfort.  (5AC at 7–11.)  Plaintiff alleges that he "continued to move his hands while cuffed very tightly in an attempt to try to keep blood flow in his hands."  (*Id.* at 9.)  Plaintiff further alleges that he was seen immediately after the incident by medical personnel and has ongoing weakness in his hands due to the overly tight handcuffing.  (*Id.* at 9, 11, 34–36.)

To meet the objective element of the deliberate indifference standard, Plaintiff must allege the existence of a "serious medical need."  *Estelle*, 429 U.S. at 104.  Plaintiff has not done so here.  First, Plaintiff has not alleged any significant injury that would have been apparent and obvious.  For example, nothing suggests that Plaintiff had any cuts or abrasions on his wrists or swollen hands.  *Cf. MacFalling v. Nettleton*, No. CV 17-02399 SVW (AFM), 2017 WL 3498616, at *7 (C.D. Cal. Aug. 15, 2017) (finding cuts, abrasions,

and swollen hands resulting from overly tight handcuffs did not rise to level of a significant injury).  Second, Plaintiff was seen by a medical provider immediately after the incident who diagnosed a muscular strain and prescribed over-the-counter pain medication.  (5AC at 34–35.)  Approximately two days later, Plaintiff saw another provider who noted "mild tenderness" and full range of motion in the shoulder.  (*Id.* at 36.)  The fact that Plaintiff's medical providers did not find Plaintiff's injuries worthy of treatment beyond prescribing an over-the-counter pain killer indicates that his injury was not a "serious medical need." *Cf. Gonzalez v. Guzman*, No. 17-cv-241-GPC-BGS, 2017 WL 5446087, at *3–4 (S.D. Cal. Nov. 14, 2017) ("[T]he fact that Nurse Calderon did not find Plaintiff's injuries worthy of any follow-up treatment and did not immediately refer Plaintiff to his PCP ('Primary Care Physician') weighs in favor of finding that his injuries were not a 'serious medical need.'"); *Edwards v. Cal. State Prison L.A. Cnty.*, No. CV 09–02584 GAF (AN), 2012 WL 3023317, at *11 (C.D. Cal. July 23, 2012) ("Because Plaintiff's own medical records establish his cuts did not constitute a serious medical need or pose a significant threat to his health, Plaintiff's medical indifference claim . . . is incurably defective.").

Even assuming that Plaintiff's nerve damage/pain is a serious medical need, Plaintiff has not sufficiently alleged that Defendant knew of this injury and disregarded an excessive risk to Plaintiff's health and safety.  Given the nature of the alleged injury, there is nothing to suggest that Defendant was aware of the extent of the alleged injury at any time.  Moreover, Plaintiff alleges that the overly tight handcuffing occurred while he was hiding a master lock key and handcuff key in his anal cavity, and "at the end of the incident . . . an RN appear[ed]."  (5AC at 11.)  Plaintiff does not contend that he requested medical attention earlier, which Defendant denied.  Under these circumstances, Defendant did not "deny, delay or intentionally interfere with medical treatment."  *See Hutchinson*, 838 F.2d at 394; *see also Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985) ("[M]ere delay . . . , without more, is insufficient to state a claim of deliberate medical indifference.").

Based on the foregoing, assuming all factual allegations in the 5AC are true and taking into consideration the medical records attached to the 5AC, the Court finds that Defendant is entitled to qualified immunity on Plaintiff's deliberate indifference to serious medical needs claim. Defendant's conduct did "not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *See Kisela*, 138 S. Ct. at 1152 (citation omitted).

Accordingly, because Defendant is entitled to qualified immunity, the Court **RECOMMENDS** that Defendant's motion to dismiss Plaintiff's deliberate indifference to serious medical needs claim under the Fourteenth Amendment be **GRANTED** with prejudice.

## IV.   CONCLUSION

For the reasons stated above, the Court **RECOMMENDS** that Defendant's motion to dismiss be **GRANTED IN PART** and **DENIED IN PART**, as follows:

The Court recommends: (1) granting Defendant's motion to dismiss Plaintiff's claims against Defendant in his official capacity; (2) granting Defendant's motion to dismiss Plaintiff's deliberate indifference to serious medical needs claim on the grounds that Defendant is entitled to qualified immunity; and (3) denying Defendant's motion to dismiss Plaintiff's excessive force claim and Fourteenth Amendment claims for violation of bodily privacy and his right to be free from punishment.

No later than **August 21, 2020**, any party to this action may file written objections with the Court and serve a copy on all parties. The document should be captioned "Objections to Report and Recommendation."

Any reply to the objections shall be filed with the Court and served on all parties no later than **September 4, 2020**. The parties are advised that failure to file objections within

///
///
///
///

the specified time may waive the right to raise those objections on appeal of the Court's order.  *See Martinez v. Ylst*, 951 F.2d 1153, 1156 (9th Cir. 1991).

**IT IS SO ORDERED.**

Dated:  August 1, 2020

Hon. Jill L. Burkhardt
United States Magistrate Judge